**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **YOLANDA FRAZIER, Individually and on Behalf of All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**OMNICARE, INC. and HENRY INDUSTRIES, INC.,**<br><br>**Defendants.** | CASE NO. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiff, Yolanda Frazier ("Plaintiff"), individually and on behalf of all similarly situated individuals ("Delivery Drivers"), and brings this action against Defendants Omnicare, Inc. ("Omnicare") and Henry Industries, Inc. ("Henry Industries, Inc.") (collectively referred to herein as "Defendants") and alleges upon personal knowledge with respect to Plaintiff and upon information and belief derived from, among other things, Plaintiff's counsel's investigation and review of public documents as to all other matters:

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants Omnicare and Henry Industries, Inc. arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

2.     This is an action brought on behalf of individuals who are current and former Delivery Drivers of Defendants Omnicare and Henry Industries, Inc. challenging the unlawful misclassification of them as independent contractors instead of employees. Defendants each contracted with various companies (herein referred to as "Regional Services Companies"), who in

turn contract with pharmaceutical Delivery Drivers who meet the demands of each Defendant's comprehensive pharmaceutical and pharmaceutical delivery business.

3.     Omnicare and Henry Industries, Inc. each controls, supervises, and directs the manner in which its Delivery Drivers perform pharmaceutical delivery services and Omnicare's and Henry Industries, Inc.'s respective business is inextricably intertwined to these services.

4.     The above-named Plaintiff asserts claims under the Fair Labor Standards Act on behalf of herself and all others similarly situated who have performed delivery work for Defendants in the United States and who were classified as independent contractors, seeking remedies for statutory violations resulting from this misclassification.

5.     Plaintiff is a former delivery driver for Defendants. Omnicare is a pharmaceutical distribution company that works with various companies (herein referred to as "Regional Services Companies") to deliver medications to pharmacies across the country. To do so, Defendants hire drivers, like Plaintiff, to make deliveries.

6.     Through this Complaint, Plaintiff alleges that Defendants repeatedly and willfully violated the FLSA and analogous Missouri wage and hour law by failing to pay minimum wage, overtime, and reimburse drivers for expenses incurred while making deliveries for Regional Services Companies.

7.     All of Defendants' drivers, including Plaintiff, have been subject to the same or similar employment policies and practices.

8.     To the extent applicable, Plaintiff asserts arbitration is unenforceable under the Federal Arbitration Act ("FAA") because Plaintiff was engaged in interstate commerce—*i.e.*, made deliveries across state lines in Illinois and Missouri.

**JURISDICTION AND VENUE**

9.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

10.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Missouri law claims.

11.     Venue in this forum is proper pursuant to 28 U.S.C. §§ 1391(a) and (b), because a substantial part of the events giving rise to this action occurred in this District and the Defendants is subject to personal jurisdiction in this District.

PARTIES

### A.  Plaintiff Yolanda Frazier

12.     Plaintiff Yolanda Frazier is an adult resident of Saint Ann, Missouri. From approximately 2016 to 2022, Plaintiff delivered pharmaceutical products on behalf of and at the direction of Henry Industries, Inc. and Omnicare in Missouri, Illinois, and Iowa.

13.     During the relevant time, Plaintiff Yolanda Frazier was Defendants' employee as that term is defined in the FLSA. She was not paid overtime the entire time that she was making pharmaceutical deliveries for Henry Industries, Inc. and Omnicare in Missouri, Illinois, and Iowa. She also did not receive any rest or lunch breaks while she was making pharmaceutical deliveries for Henry Industries, Inc. and Omnicare in Missouri, Illinois, and Iowa.

14.     Attached hereto as **Exhibit A** is a Consent to Join Form executed by Plaintiff Yolanda Frazier.

### B.  Defendants Omnicare, Inc. and Henry Industries, Inc.

15.     Defendant Omnicare, Inc. is a foreign corporation with its principal place of business in Cincinnati, Ohio and is authorized to do business under the laws of Illinois.

16.     Defendant Omnicare, Inc. is a pharmacy services provider which distributes

pharmaceuticals and related needs to pharmacies across the country.[1]

17.     In order to provide its services, Omnicare contracts with logistics companies, like Defendant Henry Industries, Inc., to make deliveries to pharmacies.

18.     Defendant Henry Industries, Inc. is a corporation with its principal place of business in Wichita, Kansas. Defendant Henry Industries, Inc. provides third party logistics services, warehousing services, and distribution services for clients with delivery needs. Defendant Henry Industries, Inc.'s clients, primarily pharmaceutical companies, are located throughout the nation. Henry operates through facilities in twenty-five cities in eleven states.[2]

19.     Defendant Henry Industries, Inc. is the entity that appeared on the top of Plaintiff's paystubs for work she completed for Defendants. *See*, top portion of paystub:



20.     At all relevant times, Defendants have been and continue to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

21.     At all relevant times, Defendants' gross receipts have exceeded $500,000.00.

---

[1] https://www.omnicare.com/ (last visited: March 14, 2023).
[2] Henry has facilities in Kansas (Hays, Salina, Topeka, and Parsons); Missouri (Florissant, Farmington, Springfield, Kansas City, Columbia, and St. Louis); Illinois (Belleville, Herrin, Quincy, and Springfield); Washington (Spokane and Seattle), Arizona (Phoenix and Tucson); Wisconsin (Pewaukee and Milwaukee); as well as California (Lodi); Iowa (Des Moines); Nebraska (Omaha); South Dakota (Sioux Falls); and Utah (Salt Lake City).

22.     Defendants jointly employed the Delivery Drivers for Omnicare's pharmaceutical deliveries.

23.     Henry Industries, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Henry Industries, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

25.     At all relevant times, Henry Industries, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

26.     Henry Industries, Inc. has the power to curtail the unlawful policies, patterns and/or practices alleged herein.

27.     Omnicare has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     Omnicare has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

29.     Upon information and belief, at all relevant times, Omnicare maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

30.     Omnicare has the power to curtail the unlawful policies, patterns and/or practices alleged herein.

31.     Failure to comply with Omnicare's policies and procedures can and does result in

termination of Plaintiff and Class Members.  In turn, Omnicare has the power to hire and fire the herein described Delivery Drivers.

32.    Upon information and belief, Omnicare has the power to terminate its agreements with Defendant Henry based on failure to adhere to specified company policies and standards.

33.    Upon information and belief, those specified policies and standards include failure to operate Defendant Henry Industries, Inc.'s business in full compliance with applicable wage-and-hour laws, or to engage in conduct that adversely affects the Omnicare brand and the goodwill of Omnicare's trademarks.

34.    Indeed, Omnicare is ultimately able to control how plaintiff and similarly situated drivers perform and complete pharmaceutical deliveries for Omnicare, and could have ended its agreement with Defendant Henry Industries, Inc. due to its systematic failure to obey federal and state labor laws.

35.    Furthermore, Omnicare exercises direct control over Delivery Drivers for pharmaceutical deliveries, including, but not limited to, controlling Delivery Drivers' rates of pay by setting delivery charges to customers.

36.    Omnicare is aware that Delivery Drivers are often required to, and do, provide their own vehicles to make their pharmaceutical deliveries.

37.    Omnicare is also aware that Defendant Henry Industries, Inc. rarely:

(a)    tracks, maintains records of, or reimburses each Delivery Driver for his or her actual vehicle expenses; or

(b)    reimburses each Delivery Driver at the IRS Business Mileage Rate for each mile driven.

38.    Omnicare is also aware that Defendant Henry Industries, Inc. has been repeatedly

sued for their Delivery Driver reimbursement practices as well as other labor violations.

39.    Omnicare has the power to stop or alter these practices.

40.    Omnicare has been aware and/or should have been aware of the wage and hour violations alleged herein, and has at all times had the authority to stop them from happening.

41.    Instead, Omnicare knowingly profited from those violations.

42.    Along with Defendant Henry Industries, Inc., Omnicare jointly employed the Delivery Drivers.

43.    Accordingly, Omnicare and Defendant Henry Industries, Inc. are "employers" of Plaintiff and similarly situated employees as that term is defined by the FLSA and analogous Missouri and hour law.

## FACTUAL ALLEGATIONS

44.    Defendant Omnicare is a pharmaceutical services company specializing in the sale, delivery, and distribution of medicine, medical devices (herein jointly referred to as "pharmaceutical products"), and pharmaceutical services throughout the United States.

45.    Defendants' businesses include the delivery of pharmaceutical and medical products to customers. Defendants employed Plaintiff and Drivers to pick-up and deliver pharmaceutical and medical products. Plaintiff and Drivers were assigned designated routes for deliveries, with assignments being classified as "regularly scheduled deliveries" and "expedited deliveries."

46.    All Drivers employed by Defendants during the relevant statutory timeframe have had essentially the same job duties.

### *Defendants misclassified Plaintiff and Drivers as "independent contractors."*

47.    Plaintiff and other Drivers were employees of Defendants under all economic

realities and any other applicable, controlling legal standards. Defendants willfully, intentionally, and knowingly improperly misclassified Plaintiff and other Drivers as "independent contractors" as part of a scheme to avoid their wage payment obligations under Federal and State laws.

48.    The employer–employee relationship existing between Defendants, and Plaintiff and other Drivers was evidenced by numerous facts, including but not limited to the following:

49.    Defendants are in the business of delivering prescriptions and medical devices from pharmacy distribution outlets to nursing homes.

50.    Plaintiff and other Drivers were delivery drivers for Defendants performing services needed to allow Defendants to carry out their business purpose.

51.    Defendants made all decisions regarding the particular courses that Plaintiff and other Drivers would take and when those routes were driven. Plaintiff and other Drivers performed assignments only determined by Defendants. Plaintiff and other Drivers did not independently schedule assignments, solicit additional work from other clients, or advertise their services. Plaintiff and other Drivers used no managerial skills in performing their assigned tasks.

52.    Plaintiff and other Drivers used their driving skills to fulfill their workload from Defendants. However, Plaintiff and other Drivers made no independent judgments as to what routes they would drive, to which facility they would deliver prescriptions and medical devices, or the sequence of their work. Rather, Plaintiff and other Drivers were told what to do, where to do it, and how to do it.

53.    Defendants gave Plaintiff and other Drivers regular assignments on a regular periodic basis. Plaintiff and other Drivers did not use their own business initiative to turn down assignments from Defendants.

54.    After clocking in, Plaintiff and other Drivers had to wait at Defendants' facilities

to receive that day's prescription. Plaintiff and other Drivers sometimes had to wait an hour before receiving the deliveries, however Defendants would not pay anything for waiting unless Plaintiff had waited more than 45 minutes. Oftentimes, Plaintiff would be paid a total of $1.00 for wait times because Defendants would start moving quickly when Plaintiff started to be paid.

55.    Plaintiff and other Drivers were subject to Defendants' daily control and direction in the manner in which they performed their assigned tasks, including when, where, and how they performed their work.

56.    Plaintiff and other Drivers were required to perform their work in an order set by Defendants.

57.    Plaintiff and other Driver made their prescription deliveries to homes and nursing care facilities with Omnicare's logo imprinted on the delivery bags.

58.    Defendants required drivers to scan information and obtain customer signatures into portable devices (smart phones or scanners) at the completion of each delivery and prior to proceeding to the next delivery.  The specifics scanner for Defendants was put on Plaintiff and other driver's personal phones.

59.    If the individual(s) did not sign for their prescriptions, Plaintiff and other drivers were required by Defendants not to deliver the prescription and return the prescription to Defendants' facility.

60.    Defendants issued work schedules to Plaintiff and other Drivers on a regular periodic basis, which were for certain days and times. Plaintiff and other Drivers were required to abide by these schedules.

61.    Defendants provided on-the-job training to the drivers, instructing them precisely how to perform each task.

62.     Defendants required Plaintiff to have their own phone for the app to scan and record Defendants' completed assignments of delivery of prescription drugs and did not reimburse them for the expense associated with use of their phone.

63.     Defendants required Plaintiff and other Drivers to work more than 40 hours per week.

64.     In particular, Defendants had Plaintiff and other Drivers work seven days a week in doing the prescription delivery to Defendants' customers, and Plaintiff and other drivers routinely worked over 40 hours a week during the time period in question in this litigation.

65.     Defendants required Plaintiff and other Drivers to work on weekends and holidays.

66.     Plaintiff and other drivers had to take a drug test every year to renew the contract.

67.     Defendants maintained the right to discharge Plaintiff and other Drivers at will.

68.     Plaintiff and other Drivers have/had no opportunity for profit or loss based on their managerial skills. The only way Plaintiff or other Drivers could make more money was to make more deliveries that were scheduled and required by Defendants.

69.     Defendants' per-delivery compensation scheme was non-negotiable and presented to Plaintiff and Drivers on a take-it-or-leave-it basis.

70.     The delivery work performed by Plaintiff and other Drivers requires no skill beyond driving a car and operating a cell phone. There is no education requirement to be a driver for Defendants and the only licensing requirement is a valid driver's license.

71.     Defendants operate a delivery business and drivers are an integral component of that business. Without the Delivery Drivers, Defendants would be unable to fulfil their business purpose.

72.     A majority of Defendants' revenue—if not all—is derived from the deliveries

Plaintiff and other Drivers make.

73.    Based on the foregoing, the economic reality is that Defendants, Plaintiff and other Drivers maintained an employer–employee relationship, and, at all relevant times, Plaintiff and other Drivers have been erroneously misclassified as "independent contractors."

### *Defendants failed to properly pay Drivers minimum wage and overtime for all hours worked.*

74.    On regularly scheduled deliveries, Plaintiff and Drivers were paid a predetermined fee for the particular "routes" driven. Oftentimes, the predetermined fee did not constitute minimum wage and overtime for all hours worked in compliance with the FLSA and analogous Missouri wage and hour law.

75.    For example, Plaintiff received $8.00-$10.00 per delivery depending on where the delivery was located.  However, there were insufficient delivery opportunities to make minimum wage over the course of the number of hours worked.  Additionally, plaintiff was required to use a badge to get inside the gate and was required to swipe around the door to get inside the door, then write down what time Plaintiff arrived and what time Plaintiff left. Often times Plaintiff would wait an hour before receiving the deliveries, however, Defendants would not pay anything for waiting unless Plaintiff had waited more than 45 minutes.  Often times, Plaintiff would be paid a total of $1.00 for wait times because Defendants would start moving quickly when Plaintiff started to be paid.

76.    Furthermore, Plaintiff was not paid overtime the entire time she worked for Defendants, and she regularly worked over forty (40) hours a week.

77.    On expedited, ad hoc deliveries referred to as "stat" runs, Plaintiff and other Drivers were paid a pre-determined fee for each completed delivery. Often times, the predetermined fee did not constitute minimum wage for all hours worked in compliance with the FLSA and analogous

Missouri wage and hour law.

78.     Defendants failed to properly reimburse Drivers for delivery-related expenses.

79.     Moreover, Defendants required Drivers to provide cars to use while making deliveries for Defendants.

80.     Defendants required Drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pharmaceuticals.

81.     Defendants required Drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for Delivery Drivers to complete their job duties.

82.     Pursuant to such requirements, Plaintiff and Drivers purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

83.     Defendants did not reimburse Drivers for delivery-related expenses.

84.     Defendants did not reimburse Drivers at the IRS standard business mileage rate.

85.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time period has been:

    a.   2019: 58 cents/mile

    b.   2020: 57.5 cents/mile

    c.   2021: 56 cents/mile

    d.   2022: 58.5 cents/mile

86.     Defendants did not reasonably approximate Delivery Drivers' expenses.

87.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated Delivery Drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Missouri law.

88.    For example, Defendants failed to reimburse workers for the wear and tear on their vehicles, for expenses like gas, mileage, or cell phone use used for the deliveries.

89.    Defendants has applied the same or similar policies, practices, and procedures to all Drivers employed by Defendants.

90.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, minimum wage, and because the Delivery Drivers incurred unreimbursed automobile expenses, the Delivery Drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

91.    Plaintiff and other Drivers had to pay for their workers' compensation insurance of their paychecks.

92.    Defendants also assessed a gas surcharge for gas taken out of Plaintiff and other driver's paycheck, even though Defendants did not reimburse Plaintiff and other drivers for gas.

93.    Defendants also charged Plaintiff and other drivers for the app to scan in record pharmacy deliveries as well as administrative fees.

94.    By failing to reimburse Drivers for delivery-related expenses, Defendants failed to pay Drivers in compliance with the FLSA and analogous Missouri law.

## COLLECTIVE ACTION ALLEGATIONS

95.    Plaintiff brings the First and Second Counts on behalf of herself and all similarly situated current and former Delivery Drivers employed by Defendants owned, operated, and controlled by Defendants' nationwide, during the three years prior to the filing of this Class Action

Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

96.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse Delivery Drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

97.    Defendants' unlawful conduct is pursuant to a company policy or practice.

98.    Defendants are or should have been aware that the FLSA required Defendants to compensate Drivers at a minimum of $7.25 per hour for all hours worked.

99.    Defendants are or should have been aware FLSA required Defendants to compensate Drivers at a minimum of $1.5 \times$ their regular rate for all hours worked in excess of 40 per workweek.

100.    Defendants are or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

101.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

102.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

103.    The FLSA Collective members are readily identifiable and ascertainable.

104.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

105.    Plaintiff brings the Third and Fourth Counts under Federal Rule of Civil Procedure

23, on behalf of herself and a class of persons consisting of

> All current and former Drivers employed by Defendants in the State of Missouri
> between the date three years prior to the filing of the original complaint and the
> date of final judgment in this matter ("Rule 23 Class").

106.    Excluded from the Rule 23 Class are Defendants legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and

otherwise proper requests for exclusion from the Rule 23 Class.

107.    The number and identity of the Rule 23 Class members are ascertainable from

Defendants' records.

108.    The hours assigned and worked, the positions held, deliveries completed, and the

rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from

Defendants' records.

109.    All of the records relevant to the claims of Rule 23 Class Members should be found

in Defendants' records.

110.    For the purpose of notice and other purposes related to this action, their names and

contact information are readily available from Defendants.

111.    Notice can be provided by means permissible under Rule 23

112.    The Rule 23 Class members are so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

113.    There are more than 50 Rule 23 Class members.

114. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

115. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Mo. Rev. Stat. §§ 290.500.

116. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

117. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

118. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

119. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

120. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

121. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.　　Whether Plaintiff and the Rule 23 Class were properly paid minimum wage for all hours worked;

b.　　Whether Plaintiff and the Rule 23 Class were properly paid overtime for hours worked in excess of 40 per work-week;

c.　　Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

d.　　Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

e.　　Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

f.　　Whether Defendants reimbursed Plaintiff and the Rule 23 Class for their actual expenses;

g.　　Whether Defendants reimbursed Plaintiff and the Rule 23 Class at the IRS standard business mileage rate for the miles they drove in making deliveries;

h.　　Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class;

i.　　The nature and extent of class-wide injury and measures of damages for those injuries.

122.　　In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award and upon resolution of this action.

## CAUSES OF ACTION

**COUNT I**
**FAILURE TO PAY MINIMUM WAGES - FAIR LABOR STANDARDS ACT**
**(29 U.S.C. § 206, *ET SEQ.*)**
**(ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE)**

123.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

124.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

125.    Defendants were required to pay Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

126.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

127.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

128.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

129.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES – FAIR LABOR STANDARDS ACT**
**(29 U.S.C. § 207, *ET SEQ.*)**
**(ON BEHALF OF PLAINTIFF AND THE FLSA COLLECTIVE)**

130.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

131.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

132.    Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

133.    By not paying Plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

134.    As a result of Defendants willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**COUNT III**
**FAILURE TO PAY MINIMUM WAGES – MMWL**
**(MO. REV. STAT. §§ 290.500, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF AND THE RULE 23 CLASS)**

135.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

136.    Defendants paid Plaintiff and the Rule 23 Class below minimum wage for hours worked by (1) failing to pay Plaintiff minimum wage for all hours worked and (2) failing to properly reimburse Plaintiff for delivery-related expenses.

137.    By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants violated Mo. Rev. Stat. §§ 290.500, *et seq*.

138.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages as liquidated damages, costs and attorneys' fees.

**COUNT IV**
**FAILURE TO PAY OVERTIME WAGES – MMWL**
**(MO. REV. STAT. §§ 290.500, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF AND THE RULE 23 CLASS)**

139.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

140.    Defendants paid Plaintiff and the Rule 23 Class less than 1.5× their regular rate for hours worked in excess of 40 per workweek.

141.    By not paying Plaintiff and the Rule 23 Class at least 1.5× their regular rate, Defendants violated Mo. Rev. Stat. §§ 290.500, *et seq*.

142.    As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional two times unpaid wages as liquidated damages, costs and attorneys' fees.

**WHEREFORE**, Plaintiff Yolanda Frazier prays for all of the following relief: Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members;

B.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

C.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

D.    A declaratory judgment that the practices complained of herein are unlawful under

MMWL;

   E. An award of unpaid minimum wages, overtime wages, unreimbursed expenses,

and liquidated damages under MMWL;

   F. An award of prejudgment and post-judgment interest;

   G. An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees; and

   H. Such other legal and equitable relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

   Plaintiff demands a trial by jury of all issues so triable.

Dated:  3/14/2023    By: /s/ Tiffany Marko Yiatras
          Tiffany Marko Yiatras
          Francis J. "Casey" Flynn, Jr.
          **CONSUMER PROTECTION LEGAL, LLC**
          308 Hutchinson Road
          Ellisville, Missouri 63011-2029
          Tele: 314-541-0317
          Email: tiffany@consumerprotectionlegal.com
          Email: casey@consumerprotectionlegal.com

          Philip Krzeski (OH BAR #0095713)*
          **CHESTNUT CAMBRONNE PA**
          100 Washington Avenue S, Suite 1700
          Minneapolis, MN 55401
          Telephone: (612) 339-7300
          Fax: (612) 336-2940
          Email: pkrzeski@chestnutcambronne.com

          *To Seek Admission Pro Hac Vice*

          **ATTORNEY FOR PLAINTIFF AND PUTATIVE RULE 23 CLASS**